436 So.2d 44 (1983)
David Lee HAWKINS, Appellant,
v.
STATE of Florida, Appellee.
No. 61936.
Supreme Court of Florida.
July 14, 1983.
Rehearing Denied September 9, 1983.
*45 Jerry Hill, Public Defender and W.C. McLain, Asst. Public Defender, Tenth Judicial Circuit, Bartow, for appellant.
Jim Smith, Atty. Gen. and Michael J. Kotler, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
The appellant, David Lee Hawkins, was convicted of two counts of first-degree felony murder, one count of robbery, and two counts of burglary. The jury failed to recommend the imposition of death sentences for the murder convictions. The trial judge, however, sentenced appellant to death for each of the murder convictions and also to thirty years imprisonment for robbery and to thirty years imprisonment for one count of burglary, these last two sentences to run consecutively. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
We affirm the convictions for first-degree felony murder, but reduce the death sentences to life imprisonment without possibility for parole for twenty-five years. We affirm the conviction for robbery, but vacate the sentence because the robbery was the underlying felony for the first-degree murder convictions. We find that each of the burglary counts charged the same crime; therefore, we affirm only the conviction and sentence for the first burglary count and reverse as to the conviction for the second count.
The evidence established that the victims, Robert Schreckengost and Chris Musick, were brothers staying alone at their parents' home in Golden Gate, a sparsely-developed subdivision near Naples. A sheriff's deputy was summoned to the area by a neighbor who heard a large truck stop near the Schreckengost residence. The deputy found appellant and David Troedel at the truck. In answer to the deputy's questions, appellant stated that the truck had stalled and that he and Troedel had gone to the Schreckengost home for help, but had returned to the truck when they found no one home.
Two automatic pistols were found in the truck, a .25 caliber and a .22 caliber. A number of other items, including an orange towel and stereo speakers, were also in the truck. Hawkins had in his possession some foreign coins later identified as belonging to the Schreckengosts. Several rifles and a pillowcase filled with jewelry and money, all belonging to the Schreckengosts, were found in a wooded area between the house and the truck, as were two pairs of rubber gloves and a knife in a leather case bearing the initials "D.T."
The victims were found in the master bedroom of the house. Musick had been shot twice in the head and was dead; Schreckengost was still alive but had multiple gunshot wounds in the head and legs. Both .25 caliber and .22 caliber bullets were found on the scene and in the victims' bodies. Evidence of a neutron activation test conducted on Hawkins and Troedel was admitted, which established that gunpowder residue was found on the hands of both men, though a much higher concentration *46 was found on Troedel. The testimony also reflected that Hawkins could have gotten the residue on his hands without his touching the gun, by being in the room when the gun was fired. The state introduced the testimony of a witness who stated that he overheard a conversation between Hawkins and Troedel at a bar early on the evening of the murders and that Hawkins was talking about guns and about wanting to "blow away" two people in Golden Gate.
Hawkins gave a statement to the police a few hours after his arrest, and he also testified in his own defense at trial. His testimony and statement reflected that he knew Schreckengost and Troedel slightly. He admitted accompanying Troedel to the Schreckengost home, but claimed that when he discovered Troedel's intention to rob Schreckengost and saw that Troedel had a gun, he was afraid and simply followed Troedel's orders to collect money and jewelry. He further testified that he did not know his codefendant, Troedel, intended to commit murder and that he was afraid Troedel would kill him if he intervened. He testified that Troedel shot both victims.
The jury was instructed that it could find the defendant guilty of premeditated murder or felony murder with regard to each of the victims. The jury returned a verdict form finding Hawkins guilty of felony murder and identifying the felony as robbery. The jury expressly omitted finding appellant guilty of premeditated murder. The jury did not recommend the imposition of the death sentence because six jurors believed that a life sentence should be imposed.
At the sentencing hearing before the trial judge, the appellant again insisted he did not kill the victims, but that Troedel did. Appellant offered into evidence the results of a polygraph test that confirmed he was telling the truth on this point. The polygraph report was admitted into evidence without objection. The trial judge, in imposing the death sentence, relied in part on the evidence that Hawkins, early on the evening of the murders, had stated that he wanted to go out to Golden Gate and "blow away a couple of dudes."
The codefendant, Troedel, was tried separately and convicted of first-degree murder. The death sentence has been imposed, and Troedel's case is pending review in this Court.
On the issue of his convictions, Hawkins asserts that none of his convictions are proper because he conclusively established that he acted under duress exerted by his codefendant, Troedel. We disagree. The evidence was clearly sufficient for the jury to conclude that Hawkins acted voluntarily in participating in the burglary and robbery and the felony murders. In this state, when a person voluntarily participates in a robbery, that person is guilty of first-degree felony murder when a killing occurs during the commission of that robbery even though he did not actually do the killing because "the felony murder rule and the law of principals combine to make a felon generally responsible for the lethal acts of his co-felon." Enmund v. State, 399 So.2d 1362, 1369 (Fla. 1981) (quoting Adams v. State, 341 So.2d 765, 768-69 (Fla. 1976), cert. denied, 434 U.S. 878, 98 S.Ct. 232, 54 L.Ed.2d 158 (1977)), rev'd on other grounds, ___ U.S. ___, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982); § 782.04(1)(a), Fla. Stat. (1979). The felony murder convictions were supported by the evidence and are proper.
Hawkins next contends that he should not have been found guilty of both burglary counts since each count charged the same crime, although one was grounded in an assault committed during the burglary and the other in carrying a deadly weapon. We agree with this assertion and reverse Hawkins' conviction on one charge of burglary because the two counts constituted the same statutory offense under section 810.02, Florida Statutes (1979). We note that the trial judge did not sentence appellant for the second burglary count "because the court is considering Count V [burglary while armed with a deadly weapon] as the same charge as in Count IV [burglary during which an assault was committed] for which it has already imposed sentence."
*47 We also find, as conceded by the state, that the sentence for robbery was improper because the robbery was the underlying felony specified by the jury as justifying the conviction for the first-degree murder. Appellant cannot be sentenced for both robbery and the first-degree murder under the rule we established in State v. Hegstrom, 401 So.2d 1343 (Fla. 1981). See also Faison v. State, 426 So.2d 963 (Fla. 1983). The robbery conviction is proper, but we vacate the separate sentence for robbery.
In the sentencing phase, the critical issue concerns the trial judge's imposition of the death sentence when the jury did not recommend death. There was no recommendation for the imposition of death because six jurors recommended the imposition of a life sentence. We have consistently held that a jury's sentencing recommendation is entitled to great weight and that a trial judge may refuse to accept the jury's life recommendation only when the facts are "so clear and convincing that virtually no reasonable person could differ" on the propriety of the death sentence. Tedder v. State, 322 So.2d 908, 910 (Fla. 1975). See also Walsh v. State, 418 So.2d 1000 (Fla. 1982), and cases cited therein. This standard necessitates that we determine whether there is a reasonable basis for the jury's recommendation of life imprisonment under the facts of each case. Barfield v. State, 402 So.2d 377 (Fla. 1981), and cases cited therein.
The jury in this case found Hawkins guilty of first-degree felony murder committed during a robbery and expressly rejected a finding of premeditated murder. The jury also heard Hawkins' testimony that Troedel killed the victims. It knew that this testimony appeared to be corroborated by the evidence that a greater concentration of gunpowder residue was found on Troedel's hands than on Hawkins', and that the amount of gunpowder residue on Hawkins' hands was consistent with his not touching a firearm but simply being in the room at the time of the killing. Hawkins also put on testimony of his character, his relative youth, and his lack of a significant history of prior criminal activity. The jury verdict's express rejection of premeditated murder is consistent with the conclusion that Troedel was the triggerman, as is the polygraph evidence submitted to the trial judge without objection. We conclude that, on the basis of this record, there was a reasonable basis for the jury not to recommend the imposition of the death sentence and agree that this is not a case in which the death sentence should have been imposed.
For the reasons expressed, we approve the convictions for first-degree felony murder, robbery, and one count of burglary. The death sentences are vacated, and this cause is remanded to the trial court for the imposition of life sentences without the possibility of parole for twenty-five years. We also vacate the thirty-year sentence for robbery, but approve the thirty-year sentence for burglary.
It is so ordered.
ALDERMAN, C.J., and OVERTON, McDONALD, EHRLICH and SHAW, JJ., concur.
BOYD, J., concurs in part and dissents in part with an opinion, in which ADKINS, J., concurs.
BOYD, Justice, concurring in part and dissenting in part.
I concur with the decision of the Court affirming appellant's convictions of two counts of murder in the first degree, robbery, and burglary. I dissent, however, from that portion of the Court's decision that overturns the trial court's determination that death is the appropriate punishment in this double murder case.
The trial judge in essence found from the evidence that the murders were committed in the course of appellant's participation in the inherently violent and dangerous felonies of robbery and burglary and were thus motivated in part by pecuniary gain; that the murders were committed so that appellant and his accomplice might avoid detection *48 and arrest for their crimes of robbery and burglary; that the murder of one of the victims was especially heinous, atrocious, or cruel in that he was shot numerous times in various parts of his body and died slowly, gasping for breath; and that the murders were committed in a cold, calculated, and premeditated manner without pretense of moral or legal justification in that appellant and his accomplice knew in advance that two murders would result from their activities on the night of the crimes. The court found no mitigating circumstances.
The jury failed to recommend a sentence of death by majority vote and therefore by law the jury recommendation must be taken as advising a sentence of life imprisonment without parole for twenty-five years. But the trial judge's function is to assure that consistency is maintained in the sentencing process and this is why our law gives the judge the power to override the jury's recommendation after giving it due consideration.
It is true that verdict forms returned at the guilt phase of the trial indicated that the jury found appellant guilty of the murders on the theory of felony murder rather than premeditation, perhaps because of uncertainty concerning which of the perpetrators was the dominant force in this spasm of murderous activity. Such specifications of the theory of guilt by the jury are not uniformly used, and nothing in our capital felony sentencing law prohibits a death sentence purely because the jury indicates that the capital felony conviction rests on the felony murder theory. Here two guns were used. Bullets from both guns were found in the bodies of both victims. A smaller amount of chemical residue was found on the hands of appellant than on Troedel's hands, but both men were clearly present at the shooting. Perhaps appellant wore the rubber gloves introduced into evidence. For well-established reasons, appellant's exculpatory polygraph examination should be given little weight and probably should have been excluded by the trial court. There was evidence that appellant planned these murders. It is interesting to note that codefendant Troedel at his separate trial used the same strategy of defense and tried to place the entire blame on Hawkins as planner and dominant force in the criminal scheme. I conclude that both men were equally responsible for the murders of the two young victims regardless of who actually fired the fatal shots. The appropriate penalty under the law is death.
ADKINS, J., concurs.