449 So.2d 332 (1984)
James Michael SNOWDEN, Appellant,
v.
STATE of Florida, Appellee.
No. 82-1740.
District Court of Appeal of Florida, Fifth District.
March 29, 1984.
*333 James B. Gibson, Public Defender, and James R. Wulchak, Chief, Appellate Division, Asst. Public Defender, Daytona Beach, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Mark C. Menser, Asst. Atty. Gen., Daytona Beach, for appellee.
ORFINGER, Chief Judge.
A jury convicted James Michael Snowden of the crimes of third degree murder and grand theft. He appeals these convictions and separate sentences, contending that he should not have been separately sentenced for both crimes and that the court erred in sentencing him as an habitual felon.
Appellant was charged in separate counts with the first degree murder and armed robbery of Bruce Cundiff, Sr. The State presented the testimony of Henry Harrell, one of the participants in the robbery, who testified that with Snowden giving directions, Harrell, Snowden, and a third man, Snipes, drove to a dirt road near the Shrimp Boat Restaurant in Titusville where, according to Harrell, defendant Snowden and Snipes left Harrell with the car and headed across U.S. 1 toward the restaurant. Harrell drove the car around for a while and then, as he returned to the dirt road, he heard one gunshot and saw Snowden, followed by Snipes, running back to the car. According to Harrell, as soon as the two men were in the car, Snipes asked Snowden "Why?" and Snowden replied, "I didn't want to shoot him; I didn't mean to." The three men then returned to Snowden's house where they removed the money from the cash box, and then headed for Moore Haven, Florida. During the drive the men split the money between them.
On November 3, 1982, the jury returned its verdict, finding Snowden guilty of third degree murder on Count I and of grand theft on Count II. Following a sentencing hearing on December 9, 1982, at which time the court found Snowden to be an habitual offender, the trial court adjudicated Snowden guilty and sentenced him to thirty years on the third degree murder conviction and ten years on the grand theft conviction with credit for time served. The court retained jurisdiction over one-third of the appellant's murder sentence, and ordered that the two jail terms be served consecutively. Snowden now appeals arguing improper prosecutorial comment, double *334 jeopardy, and error in the enhancement of his sentence.

Improper Prosecutorial Comment
Appellant contends that the prosecutor improperly commented on the exercise of appellant's right to remain silent and that such comment requires reversal. During the evidence phase of the trial, the State presented testimony that Snowden, while in a holding cell in the Titusville Police Department, overheard policemen talking about confiscating Snowden's shoes as possible evidence. The tread on the shoes was similar to the tread on a footprint found near the Shrimp Boat Restaurant, according to one of the police officers. Soon thereafter, Snowden ripped off the soles of his tennis shoes and tried to flush them down the toilet in his cell. Snowden did not testify at trial.
During closing arguments, the prosecutor, in referring to the significance of these actions by the defendant, made the following statement:
Why would a Defendant destroy his shoes if he knew there was no way any shoe impressions would be there at the scene? The answer is clearly this: he knew that the police wanted those shoes. He immediately suspected there was some kind of shoe impression. He proceeded to destroy his shoes and to render their use as evidence on one of them almost impossible, and on the second he was intercepted before he completed. And then at one of the Court appearances he told Bo Harrell, "I did it, flushed them down the toilet, tore the soles off because they had a shoe print." He thought they had a shoe print.
Ron Sinclair [police officer] says, yes, these match, correspond, but there are no distinctive characteristics.
But it's the reaction of the Defendant which cries in loud corroboration that Bo Harrell is telling the truth, that Margaret Wilkerson is telling the truth; because, ladies and gentlemen, there is no circumstance from which you can infer that the Defendant did this for any other reason than to conceal his guilt of the homicide of Bruce Taylor Cundiff. There is no inference.

I challenge the Defendant to present a reasonable inference to explain why the Defendant tore these soles off and flushed them down the commode at Titusville Police Department. [Emphasis supplied].
Defense counsel objected on the grounds that the last mentioned sentence was a comment on the accused's failure to testify. He then moved to strike the comments and asked for a curative instruction as well as a mistrial. The court denied these motions, finding that the prosecutor was merely commenting on the evidence and not on the defendant's failure to testify.
On appeal, however, appellant contends that the comments were not on the evidence but on the lack of testimony from the defendant to explain the reasons for his actions. The State responds that the prosecuting attorney was arguing an inference to be taken from an undisputed fact and was simply challenging the attorney for the defense to present a better one. Therefore, because the statement was merely an interpretation of the evidence, the State contends that the comment was not one on the defendant's failure to testify.
It is a well-established rule that comments on the accused's failure to testify violate the fifth amendment privilege against self-incrimination, Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), and that such a comment requires a reversal of the conviction without regard to the harmless error rule. Harris v. State, 438 So.2d 787 (Fla. 1983); David v. State, 369 So.2d 943 (Fla. 1979); Trafficante v. State, 92 So.2d 811 (Fla. 1957). See also Fla.R.Crim.P. 3.250. Specifically, any comment which is "fairly susceptible" of being interpreted by the jury as referring to a criminal defendant's failure to testify constitutes reversible error without resort to the harmless error doctrine. David, Trafficante; Brazil v. State, 429 So.2d 1339 (Fla. 4th DCA 1983); Wilson *335 v. State, 371 So.2d 126 (Fla. 1st DCA 1978).
When viewed in the context of the complete statement, the complained of language does not appear to us to be a comment on defendant's silence, but a comment on the evidence. A prosecutor may comment on the general lack of defense evidence, and such comment is not improper. White v. State, 377 So.2d 1149 (Fla. 1979); Helton v. State, 424 So.2d 137 (Fla. 1st DCA 1982), pet. rev. denied, 433 So.2d 519 (Fla. 1983); also see, Smith v. State, 378 So.2d 313 (Fla. 5th DCA 1980). Here, the State had opening and closing final arguments to the jury, and the comment complained of was made during the State's opening portion of the final argument. We view the language as an invitation to the defense lawyer to come up with a better explanation than was provided by the prosecutor, a situation similar to that found in Duncan v. Stynchcombe, 704 F.2d 1213 (11th Cir.1983), where the court said:
It appears more likely that the prosecutor was attempting to point out to the jury the lack of evidence concerning Duncan's whereabouts at the time of the robbery. A comment on the failure of the defense, as opposed to that of the defendant to counter or explain the testimony presented or evidence introduced is not an infringement of defendant's fifth amendment privilege.
Id. at 1215-1216. We discern no error in the denial of defendant's motion for mistrial.

Double Jeopardy
Snowden contends that the trial court erred in convicting and sentencing him for grand theft in addition to the conviction of third degree murder, defined by statute as a felony murder.[1] His contention appears to be well taken.
With regard to the murder charge, the jury was instructed on the various degrees of homicide from first degree premeditated murder to third degree murder and manslaughter. Then, at the request of defense counsel and with the consent of the prosecutor, the court instructed the jury that grand theft was a crime which could be considered as an underlying felony of third degree murder and the jury, clearly finding the evidence insufficient to support a higher degree murder conviction, returned a verdict of guilty on third degree murder and grand theft. The question then is whether the defendant may legally be convicted of third degree (felony) murder and also be convicted of the underlying felony on which the murder conviction is based.
In State v. Pinder, 375 So.2d 836 (Fla. 1979) the supreme court held that the State could prosecute a first degree murder charge on the theory of felony murder although premeditated murder was charged, but where the only evidence to sustain the murder conviction was furnished by proof that the killing occurred as the result of one of the felonies enumerated in Section 782.04(1), Florida Statutes, the defendant could not be convicted and punished for both the felony murder and the underlying felony. Id. at 839. In State v. Hegstrom, 401 So.2d 1343 (Fla. 1981), the supreme court concluded that conviction on both the underlying felony and the felony murder on which it was based was constitutionally permissible, but that section 775.021(4), Florida Statutes proscribed punishment for the underlying felony offense, and to that extent receded from Pinder.
State v. Monroe, 406 So.2d 1115 (Fla. 1981) followed Hegstrom and approved conviction of both robbery with a firearm and possession of a firearm while committing a felony (which the district court of *336 appeal had held to be a lesser included offense) but vacated the sentence for the possession count. In Faison v. State, 426 So.2d 963 (Fla. 1983) the court approved a conviction for both burglary with an assault and sexual battery (the underlying assault in the burglary charge), relying on Hegstrom and reversing the district court of appeal which had vacated the sexual battery conviction. No sentence had been imposed on the sexual battery count by the trial court.
The questions raised by Hegstrom and its progeny appear to have been dispelled by the decision in Bell v. State, 437 So.2d 1057 (Fla. 1983). In Bell, the supreme court said:
The district court's reliance on State v. Hegstrom in affirming the convictions below is misplaced. We did not intend to hold in Hegstrom that the double jeopardy clause of amendment 5, United States Constitution, or article I, section 9, Florida Constitution, permits a defendant to be convicted of both a greater and a lesser included offense provided no sentence is imposed for the lesser included offense. As we have stated before, the explicit exclusion of lesser included offenses in section 775.021(4) makes clear that the legislature does not intend separate convictions and punishments for two or more statutorily defined offenses when in fact only one crime has been committed. Id. at 1267. We recede from State v. Monroe, 406 So.2d 1115 (Fla. 1981), to the extent it is in conflict with this conclusion.
The court then stated unequivocally that once it has been established that an offense, whether charged or not, and whether in single or separate proceedings, is a lesser included offense of a greater offense also charged, then the double jeopardy clause proscribes multiple convictions and sentences for both the greater and lesser included offenses.
It seems to us that in receding from Monroe which relied on Hegstrom, the court also receded from Hegstrom to the extent that the latter approved a conviction for both felony murder and the underlying felony on which the murder conviction is based. We would say this with more assurance were it not for the opinion in Hawkins v. State, 436 So.2d 44 (Fla. 1983). In Hawkins, the supreme court affirmed the conviction of robbery as the underlying felony in the felony murder conviction, but vacated the sentence. We believe that Bell is the binding opinion of the supreme court on the double jeopardy issue here. Without discussing the apparent inconsistency between Hawkins and Bell, our sister court has recently relied on Bell as requiring the conclusion that a defendant cannot be convicted or sentenced for the robbery and also for the first degree felony murder for which the robbery is the underlying felony. State v. Harris, 439 So.2d 265 (Fla. 2d DCA 1983). We agree that this result is mandated by Bell.[2]
*337 Since the jury was instructed that grand theft would be an underlying basis for third degree murder (and grand theft was charged only in this context), clearly the jury convicted appellant of grand theft as the underlying felony of third degree murder, and on the basis of Bell, both the conviction and sentence for grand theft must be set aside.

Enhanced Sentence
Prior to sentencing on December 9, 1982, the State filed a notice of intent to seek an enhanced penalty, pursuant to Florida Statute section 775.084 (1981),[3] relying on a prior felony conviction for aggravated battery on February 23, 1982. Appellant contends that the prior conviction relied on by the State is not a "qualifying offense" such as will activate the statute here.
The statute authorizes an enhanced penalty when, among other requirements, "the felony for which defendant is to be sentenced [the murder here] was committed within five years of the date of the conviction of the last prior felony ... [the earlier aggravated battery conviction]." The murder for which appellant was convicted here occurred on December 19, 1981. He was then convicted for aggravated battery on February 23, 1982, having committed that crime prior to committing the subject murder. Appellant contends that because he had not previously been convicted of the aggravated battery when the murder was committed, the aggravated battery is not a qualifying offense under the statute. The State contends that the language of the statute is ambivalent and that the phrase "within five years" can be read to apply to convictions even after the occurrence of the offense for which a defendant is being sentenced.
With some subsequent amendments, section 775.084 was adopted in 1971. Prior to that time provisions for enhancing penalties were found in section 775.09, Florida Statutes (1969) (second conviction of felony) and section 775.10 (fourth conviction of felony). The supreme court construed these statutes in Joyner v. State, 158 Fla. 806, 30 So.2d 304 (Fla. 1947), holding that:
To constitute a second or a fourth conviction within the purview of sec. 775.09 or sec. 775.10, supra, the information or indictment must allege and the evidence must show that the offense charged in each information subsequent to the first was committed and the conviction therefore was had after the date of the then last preceding conviction. In other words, the second conviction must be alleged and proved to have been for a crime committed after the first conviction. The third conviction must be alleged and proved to have been for a crime committed after both the first and second convictions, and the fourth conviction *338 must be alleged and proved to have been for a crime committed after each of the preceding three convictions.
Explaining its interpretation, the court said:
There are two reasons why this is true: (1) because the purpose of the statute is to protect society from habitual criminals who persist in the commission of crime after having been theretofore convicted and punished for crimes previously committed, it is contemplated that an opportunity for reformation is to be given after each conviction. (2) This construction is implicit in the statutes.
See also Guilford v. Mayo, 93 So.2d 110 (Fla. 1957).
A similar result was reached under section 404.15, Florida Statutes (1971) (since repealed) which provided for enhanced penalties for second or subsequent convictions of the Drug Abuse Law. In Karz v. State, 279 So.2d 383 (Fla. 2d DCA 1973) the court said:
This rule has generally been applied to subsequent offender statutes such as Florida Statutes §§ 775.09 and 775.10, F.S.A., which, although now repealed, provided that any person who "after having been convicted of a felony" commits another felony is punishable as a second or subsequent offender. Cases dealing with those statutes required that in order to punish a person as a subsequent offender it was necessary that the offenses after the primary one were in each case committed subsequent to conviction for the preceding offense. Perry v. Mayo, Fla. 1954 [Fla.] 72 So.2d 382.
* * * * * *
The reason for enhancing a sentence for a subsequent offense is to serve as a warning to first offenders and to afford them an opportunity to reform. The reformatory object of the statute, namely to deter future crime, would be frustrated if the offender were given no opportunity to reform. See cases collected in the annotation at 24 A.L.R.2d 1247 and in State v. Johnson, 1969, 109 N.J. Super. 69, 262 A.2d 238.
Id. at 384.
Although dealing with that portion of the subject statute providing for enhanced sentencing based on multiple misdemeanor convictions, the third district has reached the same result under the current statute in Shead v. State, 367 So.2d 264 (Fla. 3d DCA 1979). Although the current statute differs somewhat in its operative language from the earlier version, we see nothing in it that expresses a purpose other than was earlier noted by the supreme court in Joyner, viz., to protect society from habitual criminals who persist in the commission of crime after having been theretofore convicted and to permit an opportunity for reform after each conviction. As did the court in Joyner, we hold therefore that for a felony conviction to serve as a qualifying offense for purposes of enhanced sentencing under 775.084, the prior felony conviction must have occurred before (and within five years of) the commission of the crime for which a defendant is being sentenced. Because this was not the case here, the court erred in enhancing Snowden's sentence.
The trial court relied heavily on Eutsey v. State, 383 So.2d 219 (Fla. 1980) as support for the enhanced sentence. The court in Eutsey upheld the constitutionality of the statute and approved the enhanced sentence in that case, but the facts there reveal that Eutsey committed a felony on January 23, 1976 for which he was convicted and was sent to prison. Within "nineteen or twenty days after Eutsey's release from prison on the first felony for which he was sentenced" Eutsey committed the offense for which he was convicted on July 20, 1978, and for which the enhanced penalty was imposed. Eutsey does not alter the rule of law previously announced by the supreme court.
The appellant's other points have been considered and are found to be without merit. The conviction for third degree murder is affirmed. The conviction for grand theft is reversed and the sentence *339 for that offense is set aside. The enhanced sentence for the third degree murder conviction is set aside and the case is remanded to the trial court for resentencing on that count.
AFFIRMED in part, REVERSED in part and REMANDED.
COBB and COWART, JJ., concur.
NOTES
[1] Fla. Stat. § 782.04(4) defines third degree murder as:

The unlawful killing of a human being, when perpetrated without any design to effect death, by a person engaged in the perpetration of, or in the attempt to perpetrate, any felony other than any other arson, sexual battery, robbery, burglary, kidnapping, aircraft piracy, or unlawful throwing, placing, or discharging of a destructive device or bomb, shall be murder in the third degree and shall constitute a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
[2] The apparent inconsistency between Hawkins and Bell might be explained by concluding that the court does not consider the underlying felony in a felony murder conviction to be a lesser included offense of the felony murder. This conclusion does not hold up, however, when we consider that in Hegstrom, the basis for holding that a sentence was improper for the underlying felony was the proscription in Section 775.021(4), Florida Statutes which precludes a separate sentence for a lesser included offense. The Hegstrom court clearly held that where a felony murder is predicated on the proof that it was committed during the course of a robbery, the underlying robbery is a lesser included offense of the felony murder. Since Bell clearly holds that multiple convictions (as well as multiple sentences) on lesser included offenses violate the double jeopardy clause, we cannot conclude other than that the court has receded from Hegstrom as well as from Monroe. Thus the apparent inconsistency between Hawkins and Bell can only be explained by assuming that Hawkins was issued in error (see Garcia v. State, 444 So.2d 969, Fla. 5th DCA 1983), or that because Bell was not final when Hawkins was issued, Bell is actually the latest pronouncement of the supreme court and that it recedes from Hawkins as well. See also, Portee v. State, 447 So.2d 219 (Fla. 1984).

We note that in Squires v. State, 450 So.2d 208 (Fla. 1984), the Supreme Court, in dictum, has indicated that Hegstrom and its sentencing restriction in felony murder situations is still viable. We hope the court will clear up the confusion as to whether Hegstrom or Bell controls in this situation. The Hegstrom court held that "[b]ecause the crime of first-degree murder committed during the course of a robbery requires, by definition, proof of the predicate robbery, the latter is necessarily an offense included within the former" [Emphasis supplied]. For the reasons previously explained, we believe Bell to be the binding precedent.
[3] In pertinent part, section 775.084 provides:

(1) As used in this act:
(a) "Habitual felony offender" means a defendant for whom the court may impose an extended term of imprisonment, as provided in this section, if it finds that:
1. The defendant has:
a. Previously been convicted of a felony in this state;
b. Twice previously been convicted of a misdemeanor of the first degree in this state or of another qualified offense for which the defendant was convicted after the defendant's 18th birthday;
2. The felony for which the defendant is to be sentenced was committed within 5 years of the date of the conviction of the last prior felony, misdemeanor, or other qualified offense of which he was convicted, or within 5 years of the defendant's release, on parole or otherwise, from a prison sentence or other commitment imposed as a result of a prior conviction for a felony or other qualified offense, whichever is later;
3. The defendant has not received a pardon for any felony or other qualified offense that is necessary for the operation of this section; and
4. A conviction of a felony, misdemeanor, or other qualified offense necessary to the operation of this section has not been set aside in any post-conviction proceeding. [emphasis supplied].