466 So.2d 1246 (1985)
John F. WILLIAMS, Appellant,
v.
STATE of Florida, Appellee.
No. AW-152.
District Court of Appeal of Florida, First District.
April 11, 1985.
*1247 Michael E. Allen, Public Defender, and Carl S. McGinnes, Asst. Public Defender, for appellant.
Jim Smith, Atty. Gen., and Thomas H. Bateman, III, Asst. Atty. Gen., for appellee.

ON MOTION FOR REHEARING
PER CURIAM.
Having considered appellee's motion for rehearing and reconsidered other issues involved in this case, we withdraw the decision and opinion filed February 12, 1985, substituting the following decision and opinion therefor. The motion for rehearing is otherwise denied.
Williams appeals from a final judgment following a jury trial at which he was adjudicated guilty of first degree felony murder and armed robbery (use of a deadly weapon, a knife). We reverse.
Williams was arrested at his home in Walton County in the early hours of Sunday, August 22, 1982, on a warrant issued from Okaloosa County for the murder of Ted Schery in Ft. Walton Beach. Williams was implicated by Park, who had apparently hidden Schery's body and fled in Schery's car to northern Georgia where he was apprehended. After his arrest, Williams was placed in Walton County Sheriff McMillan's automobile. Okaloosa County Undersheriff Jerry Alford was also in the car. Sheriff McMillan testified that he gave Williams Miranda warnings from memory, then asked where Schery's body was located. Williams responded that he didn't know, then stated he did not want to talk and requested an attorney. Undersheriff *1248 Alford was present during the above colloquy and heard the defendant make the above statements.
Okaloosa County Sheriff's investigator Keeler, unaware of the request for an attorney, approached Williams as he sat unaccompanied in Sheriff McMillan's car and told him it would be easier if he told where Schery's body was located. Williams responded that he didn't know. Williams was then transported to the Walton County jail, accompanied by Keeler. Keeler testified that en route he "had some conversation with Mr. Williams," but that "[i]t was nothing official." Williams related his dislike for Walton County officials, made a statement that he was not "queer," and requested to be driven by Freeport High School where he stated that he had had his first sexual experience with a girl. Keeler left Williams at the Walton County jail. Keeler saw Williams the next morning, Monday, August 23, 1982, at the Okaloosa County jail where Williams had been transferred. Keeler asked Williams what Williams called Park. Williams replied, "Mouse." Keeler asked Williams if he wanted to tell his side of the story. Williams responded, "yes." Keeler advised Williams of his rights. Initially, Williams stated he wanted an attorney. Keeler asked Williams if he meant during his statement. Williams responded, "no." Williams executed a written waiver and freely told everything to Keeler. Williams was booked following his statement, then had his first appearance which was about thirty hours after his arrest.
Undersheriff Alford testified that he never informed any of his deputies of the defendant's request for an attorney and Deputy Keeler stated that he was not aware of that request when he had his subsequent encounters with the defendant.
At trial, Williams' motions to preclude questioning of potential jurors as to their opinions regarding the death penalty and to preclude challenging for cause those jurors who would not vote for the death penalty were denied.
Park testified that he had befriended Williams, who knew Schery. Park and Williams went to Schery's apartment to get money. While Williams and Schery were engaged in a homosexual act, Park strangled Schery. Williams then cut Schery's throat.
Williams was adjudicated guilty of first degree felony murder and armed robbery. He agreed to testify against Park in exchange for the state's not seeking the death penalty. The trial court sentenced Williams on the conviction for first degree felony murder to a life sentence. No sentence was imposed for the armed robbery conviction, the trial court specifically opining that the armed robbery was an underlying felony to the first degree felony murder and that sentence on the armed robbery was therefore prohibited.
Williams contends the failure to give him a first appearance within twenty-four hours of his arrest, and the failure to provide an attorney after his request for counsel render his statements to Keeler inadmissible. Williams argues that the improper delay prompted his confession.
First appearance is required within twenty-four hours of arrest. Rule 3.130(a), Florida Rules Criminal Procedure. The booking officer is required to advise a defendant of his right to counsel, and, if counsel is requested, to put the defendant in touch with the public defender. Rule 3.111(c)(1) and (2), Florida Rules Criminal Procedure. Lack of a first appearance within twenty-four hours, however, does not affect a confession obtained after a defendant is advised of his rights and the confession is voluntary, with no indication that the delay induced the confession. Headrick v. State, 366 So.2d 1190 (Fla. 1st DCA 1979). There is no evidence that the delay in a first appearance for Williams induced the confession.
It appears quite clear, however, that Keeler's subsequent interrogation of the defendant after he had requested an attorney was contrary to the holding of the Supreme Court in Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). Williams' statements to Keeler were, therefore, inadmissible. Under Edwards, once an accused expresses a desire *1249 to exercise his right to counsel, he cannot be interrogated further by police until afforded counsel, unless he "initiates further communication, exchanges, or conversations with the police." Id., 451 U.S. at 484, 485, 101 S.Ct. at 1884, 1885, 68 L.Ed.2d at 386. Further, it matters not that Deputy Keeler was not informed by his undersheriff that the defendant had stated that he did not wish to answer further questions and requested a lawyer. See Silling v. State, 414 So.2d 1182 (Fla. 1st DCA 1982).
Williams requests that we recede from Nettles v. State, 409 So.2d 85 (Fla. 1st DCA 1982), to reverse the trial court's allowing "death qualification" of the jurors. We see no reason to recede from Nettles, noting the recent opinion of Copeland v. State, 457 So.2d 1012 (Fla. 1984), in which the same argument was rejected.
Finally, Williams argues that the armed robbery for which he was convicted was the underlying felony of the felony murder charge and that his conviction on the armed robbery was therefore prohibited. We disagree and hold that in a case such as this, the law permits both conviction and sentence on the robbery charge.
We recognize that where the separately charged robbery is a "simple" (unarmed) robbery, a defendant who is both convicted and sentenced on the robbery would be entitled to relief from at least the sentence.[1] See State v. Hegstrom, 401 So.2d 1343 (Fla. 1981); Copeland v. State, 457 So.2d 1012 (Fla. 1984); and Hawkins v. State, 436 So.2d 44 (Fla. 1983). But the robbery crime charged in Count 2 is armed robbery (Williams used a deadly weapon, a knife), a crime which is not the same as the underlying felony (simple robbery) required to prove the felony murder charge in Count 1. Under Section 782.04(1)(a)2d, first degree felony murder requires only simple robbery as the underlying felony. Thus, a most significant element of the crime charged in the robbery count is not an element of the murder count.
In Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the Supreme Court considered whether a single act could result in multiple punishments. The test spawned by Blockburger and its progeny is that two offenses are separate and distinct if each requires proof of an element that the other does not. See Iannelli v. United States, 420 U.S. 770, 785 n. 17, 95 S.Ct. 1284, 1293 n. 17, 43 L.Ed.2d 616 (1975); State v. Baker, 456 So.2d 419 (Fla. 1984); Bell v. State, 437 So.2d 1057 (Fla. 1983). And in applying the Blockburger test the courts look only to the statutory elements of each offense and not to the actual evidence to be presented at trial or the facts as alleged in a particular charging document. Iannelli, supra; Baker, supra; State v. Carpenter, 417 So.2d 986 (Fla. 1982). In the instant case, the Blockburger test is satisfied because, as we have noted, an element of the crime charged in the robbery count (that the offense was an armed robbery) is not an element of the murder count.[2]
This result, we think, comports with justice. A contrary conclusion would result in a windfall for the defendant. In order to be guilty of the crime of felony murder, the defendant need only have committed an unarmed robbery. This defendant did more. He committed the significantly greater crime of armed robbery. Why should he not be required to suffer a penalty *1250 for such armed robbery over and above the felony murder?[3]
Our conclusion is also consistent with Section 775.021(4), Florida Statutes (1983).[4] Offenses are to be regarded as separate under that section where "each offense requires proof of an element that the other does not, without regard to the accusatory pleading or the proof adduced at trial."[5] That test is met in the instant case.
Reversed and Remanded for new trial.
JOANOS, WIGGINTON and NIMMONS, JJ., concur.
NOTES
[1] The cases are in conflict on the question of whether a defendant who is entitled to relief from multiple sentences is also entitled to relief from multiple convictions. Support for vacating both conviction and sentence may be found in Bell v. State, 437 So.2d 1057 (Fla. 1983), Portee v. State, 447 So.2d 219 (Fla. 1984), and State v. Harris, 439 So.2d 265 (Fla. 2nd DCA 1983), pet. for rev. denied 450 So.2d 486 (Fla. 1984). However, the holdings in State v. Hegstrom, 401 So.2d 1343 (Fla. 1981), Hawkins v. State, 436 So.2d 44 (Fla. 1983), Faison v. State, 426 So.2d 963 (Fla. 1983), and Copeland v. State, 457 So.2d 1012 (Fla. 1984), indicate that only the sentence need be set aside.
[2] Even if the murder count had alleged the underlying felony to be an armed robbery, the defendant could still be convicted and sentenced for the separately charged armed robbery because, as we have noted above, the felony murder statute requires no more than a simple robbery as the underlying felony. Thus, an allegation in the murder count that the underlying robbery was an armed robbery would be mere surplusage.
[3] We hasten to add that we would not approve of a conviction and sentence on the robbery count if the jury had found the defendant guilty in such count of only unarmed robbery.
[4] Section 775.021(4) provides:

(4) Whoever, in the course of one criminal transaction or episode, commits separate criminal offenses, upon conviction and adjudication of guilt, shall be sentenced separately for each criminal offense; and the sentencing judge may order the sentences to be served concurrently or consecutively. For the purposes of this subsection, offenses are separate if each offense requires proof of an element that the other does not, without regard to the accusatory pleading or the proof adduced at trial.
[5] The quoted language was added in 1983 by Chapter 83-156, Laws of Florida, thus, in effect, adopting the test set forth in Blockburger, supra. Even before the 1983 amendment, however, Section 775.021(4) had been construed in such a way as to exclude from its requirement of multiple sentences only necessarily lesser included offenses. See State v. Baker, supra.