550 So.2d 111 (1989)
Dudley SCOTT, Appellant,
v.
STATE of Florida, Appellee.
No. 88-3113.
District Court of Appeal of Florida, Fourth District.
September 27, 1989.
Richard L. Jorandby, Public Defender, and Allen J. DeWeese, Asst. Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Alfonso M. Saldana, Asst. Atty. Gen., West Palm Beach, for appellee.

ON MOTION FOR REHEARING
LETTS, Judge.
We grant the state's motion for rehearing. The original opinion is withdrawn and the following is substituted:
Six years earlier, before the sentencing he appeals here, appellant pled guilty, was placed on probation and was specifically advised that he could be sentenced to up to fifteen years in prison, the statutory maximum for robbery, if he violated his probation. At that time, no effort was made by the state or the trial court to invoke the habitual offender statute. At his current sentencing, however, the state invoked the habitual offender statute. The trial court, after receiving testimony, declared that the appellant was a habitual offender pursuant to section 775.084, Florida Statutes (1977). This raised the statutory cap of allowable prison time to 30 years. Winters v. State, 522 So.2d 816 (Fla. 1988). The court then granted the state's motion to aggravate the sentence, finding that the appellant's violations of probation were egregious:
1. The defendant was sentenced on November 8, 1982, in Broward case numbers 82-7403 CF10, and 82-7974 CF10, for two counts of grand theft and robbery respectively. This court did impose four (4) years Florida State Prison in the first case and two (2) years probation consecutive to the prison time in the latter case for the defendant's conviction of robbery. The defendant was under the supervision of the Department of Corrections while on probation on January 24, 1985, which is the date of the defendant's arrest in Dade County for carrying a concealed firearm and grand theft. Additionally, the defendant was still on probation at the time he was arrested for first degree murder, two counts of attempted first degree murder, armed robbery, armed burglary, unlawful possession of a firearm while engaged in a criminal offense, and trafficking in narcotics in Dade County which occurred on January 20, 1986. The defendant was convicted in Dade County case number 85-2047, for carrying a concealed firearm and grand theft, on February 6, 1986, and the defendant was convicted in Dade County case number 86-3028(A) for third degree murder and attempted trafficking in cocaine on March 18, 1988. Therefore, this court finds that the defendant's violations of probation were egregious. State v. Pentaude, 500 So.2d 526 (Fla. 1987), Lambert v. State, 517 So.2d 133 (Fla. 4th DCA 1987), Young v. State, 519 So.2d 719 (Fla. 5th DCA 1988).
The appellant first argues that the court erred in sentencing him as an habitual offender.
We doubt that the legislature ever intended that a person could be placed on probation and then, years later, if the probation *112 failed, be subjected to the provisions of the habitual offender statute. In fact, the findings required to order probation are precisely opposite to the findings required to invoke the habitual offender statute. The purpose of habitualization is to protect society against habitual offenders. Snowden v. State, 449 So.2d 332 (Fla. 5th DCA 1984); § 775.084(4)(a), Fla. Stat. (1987). Probation, on the other hand, may only be imposed if it appears to the court that the defendant is not likely again to engage in a criminal course of conduct and that the ends of justice and the welfare of society do not require that the defendant presently suffer the penalty imposed by law. § 948.01(3), Fla. Stat. (1987). Indeed, in Shead v. State, 367 So.2d 264, 267 (Fla. 3d DCA 1979), the court noted that the required findings under the habitual offender statute and the probation statute are "inconsistent and mutually exclusive." Nevertheless, in Zambuto v. State, 413 So.2d 461 (Fla. 4th DCA 1982), which was not cited to us in the briefs, this court held that the rule which requires any trial court which accepts a guilty plea to advise the defendant of the maximum possible penalty provided by law, does not require the trial court to advise the defendant of every collateral consequence flowing from the plea. In Zambuto, the defendant pled guilty, was placed on five years probation, violated it, and had his probation revoked. The state then filed a notice of intent to seek an enhanced penalty under the habitual offender statute. We held that the enhanced penalty provision of section 775.084, Florida Statute (1979) is a collateral consequence of a plea and affirmed the sentence of an enhanced penalty. Further authority for affirmance here is State v. Payne, 404 So.2d 1055 (Fla. 1981), which held that upon revocation of probation, a defendant may be sentenced to any term which might have originally been imposed, regardless of whether the term of the second sentence exceeds that of the first, without violating double jeopardy. We, therefore, would have affirmed based on the foregoing. Nevertheless, we certify the following question:
MAY THE HABITUAL OFFENDER STATUTE BE APPLIED TO A DEFENDANT WHO WAS ORIGINALLY SUBJECT TO THE STATUTE BUT WAS INSTEAD PLACED ON PROBATION AND WHOSE PROBATION WAS LATER REVOKED?
However, the above may all be rendered irrelevant in this particular case because of our supreme court's very recent opinion in Lambert v. State, 545 So.2d 838 (Fla. 1989), wherein the court "receded" from State v. Pentaude, 500 So.2d 526 (Fla. 1987), by holding that upon a violation of probation, no further increase or departure is permitted for any reason. Under this holding, the trial court's departure for the egregiousness of the appellant's violation of probation would be error. The court would thus be restricted to imposing the original guidelines sentence (with the one cell increase permitted by Florida Rules of Criminal Procedure 3.701(d)(14) of five and one-half years to seven years). A statutory maximum of 30 years under the habitualization statute instead of 20 years would be of no import. We, therefore, feel compelled to reverse and remand for entry of a sentence within the original guidelines range, without aggravation.
REVERSED AND REMANDED.
GARRETT, J., concurs.
ANSTEAD, J., concurs in conclusion only.