470 So.2d 691 (1985)
Elwood C. BARCLAY, Appellant,
v.
STATE of Florida, Appellee.
No. 64765.
Supreme Court of Florida.
May 30, 1985.
*693 Talbot D'Alemberte, Tallahassee, and James M. Nabrit, III, New York City, for appellant.
Jim Smith, Atty. Gen. and Wallace E. Allbritton, Asst. Atty. Gen., Tallahassee, for appellee.
McDONALD, Justice.
In 1975 a jury convicted Barclay of one count of first-degree murder and recommended that he be sentenced to life imprisonment. The trial court, however, sentenced him to death, and this Court affirmed both the conviction and sentence. Barclay v. State, 343 So.2d 1266 (Fla. 1977), cert. denied, 439 U.S. 892, 99 S.Ct. 249, 58 L.Ed.2d 237 (1978). The following year this Court remanded for the trial court to conduct a hearing pursuant to Gardner v. Florida, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977). Barclay v. State, 362 So.2d 657 (Fla. 1978). After the Gardner hearing, the trial court again sentenced Barclay to death. This Court again upheld the death sentence, Barclay v. State, 411 So.2d 1310 (Fla. 1981), which the United States Supreme Court affirmed. Barclay v. Florida, 463 U.S. 939, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983).
Following the Supreme Court's affirmance, Barclay filed a petition for habeas corpus with this Court. Shortly thereafter, the governor signed a death warrant on him. After considering the petition, we held that Barclay's appellate counsel had a conflict of interest in representing both Barclay and a co-defendant and that he had rendered ineffective assistance of appellate counsel. We therefore stayed the execution and granted Barclay a new appeal. Barclay v. Wainwright, 444 So.2d 956 (Fla. 1984). Barclay now appeals his conviction of first-degree murder and sentence of death. Art. V, § 3(b)(1), Fla. Const.
In attacking his conviction Barclay argues that the trial court improperly allowed the victim's stepfather to testify as to the deceased's identity. In Welty v. State, 402 So.2d 1159 (Fla. 1981), we adhered to the general rule that a member of the victim's family should not identify the victim at trial. Such an identification, however, is not fundamental error. Id.; Barrett v. State, 266 So.2d 373 (Fla. 4th DCA 1972). The failure to make a contemporaneous specific objection to this testimony, therefore, precludes appellate review. See Routly v. State, 440 So.2d 1257 (Fla. 1983), cert. denied, ___ U.S. ___, 104 S.Ct. 3591, 82 L.Ed.2d 888 (1984); Ray v. State, 403 So.2d 956 (Fla. 1981).
Three of Barclay's co-defendants plus one other man, but not Barclay, had also been indicted for another murder. In opening argument the assistant state attorney mistakenly started reading that indictment rather than the one for the instant case. One of the defendants' attorney objected. Because neither Barclay's name nor that of the second victim had been mentioned, the court held that the state could cure any problem by explaining its inadvertent mistake to the jury. Barclay now relies on Jones v. State, 194 So.2d 24 (Fla. 3d DCA 1967), and Fulton v. State, 335 So.2d 280 (Fla. 1976), to support his claim of entitlement to a new trial.
We find Barclay's reliance on these cases misplaced. In Jones the district court found the state's reference to "other" mugshots too prejudicial to be allowed to stand. In Fulton this Court held that a witness cannot be examined as to pending criminal charges. Neither of these cases is applicable *694 to the instant issue, and we find no reversible error on this point.
Barclay also claims that the trial court erred in not allowing the defense to present a police officer's testimony as to yet another murder. The state objected to this witness' testifying on the basis of relevancy. The defense did not demonstrate sufficient relevancy (Hitchcock v. State, 413 So.2d 741 (Fla.), cert. denied, 459 U.S. 960, 103 S.Ct. 274, 74 L.Ed.2d 213 (1982)) to the judge's satisfaction, and we find no abuse of discretion in the court's refusal to let this witness testify.
Finally, Barclay claims that the state erred by excluding "death-scrupled" persons from the jury and that the trial court erred by giving erroneous instructions to the jury and by failing to grant Barclay's motions for severance. We find no merit to these contentions. Our review of the record reveals that no violation of Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), occurred and that the trial court adequately instructed the jury. Barclay has shown no compelling reason why a severance should have been granted and has demonstrated no abuse of judicial discretion. See McCray v. State, 416 So.2d 804 (Fla. 1982).
After reviewing Barclay's claims and the record of this case, we find that the evidence supports his conviction and that no reversible error occurred in the first part of his trial. We therefore affirm his conviction of first-degree murder.
We agree with Barclay, however, that the trial court erred in overriding the jury's recommendation of life imprisonment. In Tedder v. State, 322 So.2d 908 (Fla. 1975), this Court stated:
In order to sustain a sentence of death following a jury recommendation of life, the facts suggesting a sentence of death should be so clear and convincing that virtually no reasonable person could differ.
Id. at 910. The facts of this case do not meet the Tedder test for overriding the jury's recommendation.
The trial court found the following aggravating circumstances applicable to Barclay: (1) created great risk of death to many persons; (2) committed while engaged in a kidnapping; (3) committed to disrupt or hinder the lawful exercise of a governmental function or enforcement of the law; and (4) committed in an especially heinous, atrocious, or cruel manner. The trial court also found that, although not imprisoned, Barclay's criminal record constituted an aggravating circumstance under subsection 921.141(5)(a), Florida Statutes (1979), murder committed by a person under sentence of imprisonment. He also used Barclay's prior criminal record to support finding prior conviction of a violent felony in aggravation, even though the court admitted that he did not know if Barclay's breaking and entering conviction involved the use or threat of violence. The court found nothing in mitigation and, in fact, turned one of the statutory mitigating circumstances (no significant history of prior criminal activity) into a nonstatutory aggravating circumstance. We disagree with the trial court's findings except as to committed during a kidnapping and heinous, atrocious, or cruel, which we agree were proved beyond a reasonable doubt.
In Kampff v. State, 371 So.2d 1007, 1009 (Fla. 1979), we defined the aggravating factor of creating a great risk of death to many people as more "than a showing of some degree of risk of bodily harm to a few persons. `Great risk' means not a mere possibility but a likelihood or high probability." Moreover, in White v. State, 403 So.2d 331, 337 (Fla. 1981), cert. denied, 463 U.S. 1229, 103 S.Ct. 3571, 77 L.Ed.2d 1412 (1983), we stated that "a person may not be condemned for what might have occurred. The attempt to predict future conduct cannot be used as a basis to sustain an aggravating circumstance." (Emphasis in original.)
In the instant case Barclay and his co-defendants killed a single person at a deserted isolated location. To support finding this aggravating factor, the trial court relied on the co-defendants' wandering *695 around town looking for a likely victim and on some audio tapes, made by Barclay and his friends, which called for a black revolution. The court's reliance on its own mere speculation about what could or might have happened is a perfect example of the reasoning which White condemns. The facts of this case do not support finding this aggravating factor. Compare Lewis v. State, 398 So.2d 432 (Fla. 1981) (two by-standers do not equal many persons); Dobbert v. State, 375 So.2d 1069 (Fla. 1979), cert. denied, 447 U.S. 912, 100 S.Ct. 3000, 64 L.Ed.2d 862 (1980) (torture and abuse of four children with two being killed does not equal great risk of death to many persons); Kampff (same as Lewis).
The court's finding the murder to have been committed to disrupt or hinder the lawful exercise of a governmental function or the enforcement of the laws suffers from a similar defect. In State v. Dixon, 283 So.2d 1, 9 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974), in discussing this aggravating factor the Court stated that "the definitions of the crimes intended to be included are reasonable and easily understood by the average man." The facts of this case do not support the trial court's finding. Compare Jones v. State, 440 So.2d 570 (Fla. 1983) (sniper shot police officer in his patrol car while in uniform and on duty and while traveling from an unrelated investigation); Tafero v. State, 403 So.2d 355 (Fla. 1981), cert. denied, 455 U.S. 983, 102 S.Ct. 1492, 71 L.Ed.2d 694 (1982) (state trooper shot while attempting to arrest suspects); Antone v. State, 382 So.2d 1205 (Fla.), cert. denied, 449 U.S. 913, 101 S.Ct. 287, 66 L.Ed.2d 141 (1980) (victim shot to prevent him from testifying before grand jury). Here the trial court viewed the co-defendants' call for a black revolution as a call to destroy the government. A prediction of future conduct or events, however, will not support finding an aggravating factor. White. The trial court, therefore, erred in considering this factor.
The trial court also erred in finding prior conviction of a violent felony to be "more of an aggravating than a negative factor." This finding suffers from two defects. The information regarding Barclay's prior conviction for breaking and entering came solely from a presentence investigation. The state did not prove this factor beyond a reasonable doubt and it cannot be upheld. Williams v. State, 386 So.2d 538 (Fla. 1980). Moreover, a conviction of breaking and entering does not, on its face, prove a prior conviction of a violent felony. Lewis v. State, 398 So.2d 432 (Fla. 1981).
Finally, in discussing the aggravating circumstance of under sentence of imprisonment the court stated: "Although not imprisoned, the criminal record of Barclay is an aggravating circumstance." Also, in discussing the mitigating factor of no significant history of prior criminal activity the court said in part: "There is an aggravating, rather than a mitigating circumstance ... because of his extensive record." The trial court, besides incorrectly finding prior conviction of violent felony as a statutory aggravating circumstance, also improperly used Barclay's record as a nonstatutory aggravating factor. This indicates that the court failed to follow the correct weighing process. Mikenas v. State, 367 So.2d 606 (Fla. 1978).
We are left, therefore, with two valid aggravating factors, numerous invalid ones, and a jury recommendation of life imprisonment. The jury apparently distinguished between Barclay and his main co-defendant, Jacob John Dougan, as evidenced by its recommendations of life imprisonment for Barclay (the follower) and death for Dougan (the leader). We hold that there was a rational basis for the jury's distinction between these co-defendants and that the trial court erred in overriding the jury's recommendation.
We find no merit to Barclay's arguments that the death penalty statute is unconstitutional and affirm his conviction, but vacate his sentence of death with directions that he be sentenced to life imprisonment *696 with no eligibility for parole for twenty-five years.
It is so ordered.
BOYD, C.J., and OVERTON and SHAW, JJ., concur.
ALDERMAN, J., concurs in part and dissents in part with an opinion, in which EHRLICH, J., concurs.
ADKINS, J., dissents with an opinion.
ALDERMAN, Justice, concurring in part, dissenting in part.
I concur in the affirmance of Barclay's conviction of first-degree murder. I also agree that in light of the erroneous finding of several aggravating factors, the death sentence must be vacated. I disagree, however, with the Court's reduction of Barclay's sentence to life on the basis of the jury's life recommendation. I would vacate the sentence because I cannot determine from the record whether, absent these circumstances, the weighing process by the trial court would have resulted in the death sentence in light of the jury's recommendation of life. I do not believe, however, that Tedder v. State, 322 So.2d 908 (Fla. 1975), and its progeny compel a life sentence at this stage of the proceedings. I would remand to the trial court to reconsider its sentence, absent the erroneously found aggravating circumstances and in light of the jury's life recommendation.
EHRLICH, J., concurs.
ADKINS, Justice, dissenting.
I strongly dissent.
The facts of this case as enunciated in the majority opinion do not clearly and convincingly suggest a sentence of death. However, the record reads differently.
The essential facts as brought out in the trial and by the evidence were that the four defendants were part of a group that termed itself the "Black Liberation Army" (BLA), and whose apparent sole purpose was to indiscriminately kill white persons and to start a revolution and a racial war.
The testimony showed that on the evening of June 17, 1974, Dougan, Barclay, Crittendon, Evans and William Hearn set out in a car armed with a twenty-two caliber pistol and a knife with the intent to kill a `devil', the devil being any white person that they came upon under such advantageous circumstances that they could murder him, her or them.
That as they drove around the city of Jacksonville they made several stops and observed white persons as possible victims, but decided that the circumstances were not advantageous and that they might be observed or thwarted in their evil purpose by possible witnesses. At one stop, Dougan wrote out a note  which was to be placed on the body of the victim ultimately chosen for death.
Eventually the five men headed for Jacksonville Beach where they picked up a hitch hiker, eighteen-year-old Stephen Anthony Orlando. Against his will and over his protest they drove him to an isolated trash dump, ordered him out of the car, threw him down and Barclay repeatedly stabbed him with a knife. Dougan then put his foot on Orlando's head and shot him twice  once in the cheek and once in the ear  killing him instantly. Crittendon and Evan played a lesser part in the murder and were thus convicted of murder in the second degree.
The evidence showed that none of the defendants knew or had ever seen Orlando before they murdered him. The note, which Dougan had previously written, was stuck to Orlando's body by the knife of the murderer. The note read:
Warning to the oppressive state. No longer will your atrocities and brutalizing of black people be unpunished. The black man is no longer asleep. The revolution has begun and the oppressed will be victorious. The revolution will end when we are free. The Black Revolutionary Army. All power to the people.
The Supreme Court of the United States in Barclay v. Florida, 463 U.S. 939, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983), held that the imposition of the death penalty on this defendant did not violate the federal *697 Constitution, despite the fact that the state trial court's consideration of defendant's criminal record as an aggravating circumstance was improper under the law of Florida. In its opinion the Supreme Court quoted the following portion of the sentencing order of the trial judge:
Subsequent to the murder the defendants Barclay and Dougan ... made a number of tape recordings concerning the murder. These recordings were mailed to the [victim's mother] and to radio and television stations. All of the tapes contained much the same in content and intent. [The court then reproduced typical excerpts from transcripts of the tapes, which included the following:]
The reason Stephen was shot twice in the head was because we had a jive pistol. It only shot twice and then it jammed; you can tell it must have been made in America because it wasn't worth a shit. He was stabbed in the back, in the chest and the stomach, ah, it was beautiful. You should have seen it. Ah, I enjoyed every minute of it. I loved watching the blood gush from his eyes... .
Are these facts suggesting a sentence of death so clear and convincing that virtually no reasonable person could differ?
The conclusion of the majority is not only shocking, it is shameful to the judicial system.