510 So.2d 881 (1987)
Gregory Scott ENGLE, Appellant,
v.
STATE of Florida, Appellee.
No. 68548.
Supreme Court of Florida.
June 25, 1987.
Rehearing Denied September 3, 1987.
Steven L. Bolotin, Office of Public Defender, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen. and Andrea Smith Hillyer, Asst. Atty. Gen., Tallahassee, for appellee.
*882 PER CURIAM.
This case comes before us once again on review of a sentence of death. Art. V, § 3(b)(1), Fla. Const. In Engle v. State, 438 So.2d 803 (Fla. 1983), cert. denied, 465 U.S. 1074, 104 S.Ct. 1430, 79 L.Ed.2d 753 (1984), we affirmed appellant's conviction of first-degree murder but reversed the sentence of death, because in overriding the jury's recommendation of life imprisonment the trial judge had considered a confession of another person which had been introduced at a separate trial. Upon reversal the court below held another sentencing hearing and again sentenced appellant to death.
Testimony at trial indicated that at about 3:50 a.m. on March 13, 1979, Eleanor Kathy Tolin was present at a Majik Market in Jacksonville where she worked as a cashier. Approximately thirty minutes later the store was found unlocked and unattended and sixty-seven dollars was missing from the cash drawer. On the following day Tolin's body was found in a wooded area. It was apparent from scratches on her face that she had been dragged some distance, though she was probably dead at the time. The medical examiner, Dr. Florio, determined from his autopsy that the cause of death was ligature strangulation and multiple stab wounds in the back. He said that the victim was alive at the time of the strangulation. Dr. Florio found a fourinch laceration in the interior of the vagina which he believed was most likely caused by the insertion of a hand and the making of a fist. Because of bleeding Dr. Florio concluded that Tolin was alive when this occurred.
Several days later, as a result of a traffic stop, police learned that Nathan Hamilton knew something about the murder. Based on information obtained from Hamilton, appellant and Rufus Stevens[*] were arrested for Tolin's murder. When interviewed by the police, appellant denied taking part in the Majik Market robbery. He told detectives that on March 13, 1979, he had been riding around drinking beer with Stevens from 2:00 a.m. until daybreak. The police showed him a Buck pocketknife engraved with the initials S.E. which he acknowledged looked like his knife.
At trial, Hamilton testified that at about 8:00 p.m. on March 12, 1979, he and Stevens began driving around and drinking together. Stevens suggested that they rob a motel, but after stopping at the Majik Market where Tolin worked, Stevens stated that they ought to rob the Majik Market. When Hamilton objected that the clerk could identify them as they both lived in the neighborhood, Stevens said they could take her out of the store and get her away from the phone. Stevens and Hamilton picked up appellant between 1:30 a.m. and 2:00 a.m. Stevens asked appellant if he wanted to rob a Majik Market and appellant agreed to do so. Stevens and appellant then dropped Hamilton off at his apartment.
At the trial Hamilton identified the knife with appellant's initials as belonging to appellant and said he had never seen appellant without it. He further testified that several days after the murder Stevens told him that "We got to get rid of Scott's [appellant's] knife because that was what it was done with." At Stevens' request Hamilton tried to get the knife from appellant the next evening telling him that Stevens had said the knife was used to commit the murder. Appellant tossed his knife to Hamilton and asked if he saw any blood on it, but he would not let Hamilton have the knife. Hamilton asked appellant if he thought it was worth "a lousy fifty or sixty dollar robbery to take a girl out of a store and kill her." Appellant replied that he did not. When Hamilton asked him why he did it, appellant said that when they got her out of the store Stevens went crazy and started saying she was going to identify them. Hamilton told police that he thought appellant would be the easier of the two from whom to obtain a confession.
*883 Appellant's landlady testified that in the early morning of the day the murder was committed appellant came into the house counting money. He told her that he had been drinking beer with Stevens and that Stevens had given him twenty dollars. Several witnesses testified to a conversation that occurred between Stevens and appellant on the day of their arrest. At that time Stevens warned appellant that Hamilton might be turning them in for Tolin's murder. Appellant replied that he had no reason to run. He said that the police couldn't prove anything, but later he did try to hide his knife.
Bloodstains found on Stevens' car and on the knife identified as belonging to appellant matched Tolin's blood type, but not that of appellant or Stevens. The knife was of a type consistent with the stab wounds in Tolin's back. There were dried semen stains of undetermined origin on the backseat of Stevens' car. Hair found on the backseat and floorboard of Stevens' car likely came from the victim. A broken kitchen knife found hidden under Stevens' house trailer could have caused the mark on the victim's back below the three stab wounds.
On resentencing the court found the following aggravating circumstances:
A. THE FELONY WAS COMMITTED WHILE THE DEFENDANT WAS ENGAGED, OR WAS AN ACCOMPLICE, IN THE COMMISSION OF, OR IN ATTEMPTING TO COMMIT, OR FLIGHT AFTER COMMITTING OR ATTEMPTING TO COMMIT, A ROBBERY, SEXUAL BATTERY, ARSON, BURGLARY, KIDNAPPING, OR AIRCRAFT PIRACY OR THE UNLAWFUL THROWING, PLACING OR DISCHARGING OF A DESTRUCTIVE DEVICE OR BOMB.
B. THE CAPITAL FELONY WAS COMMITTED FOR THE PURPOSE OF AVOIDING OR PREVENTING A LAWFUL ARREST OR EFFECTING AN ESCAPE FROM CUSTODY.
C. THE CAPITAL FELONY WAS COMMITTED FOR PECUNIARY GAIN.
D. THE CAPITAL FELONY WAS ESPECIALLY HEINOUS, ATROCIOUS, OR CRUEL.
The court again found no mitigating circumstances.
Appellant first argues that the United States Supreme Court's opinion in Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), precludes the imposition of death in this case. In Enmund the Court said:
Although the judgments of legislatures, juries, and prosecutors weigh heavily in the balance, it is for us ultimately to judge whether the Eighth Amendment permits imposition of the death penalty on one such as Enmund who aids and abets a felony in the course of which a murder is committed by others but who does not himself kill, attempt to kill, or intend that a killing take place or that lethal force will be employed. We have concluded, along with most legislatures and juries, that it does not.
458 U.S. at 797, 102 S.Ct. at 3376, 73 L.Ed.2d at 1151.
We have no difficulty in deciding that the principle of Enmund is not applicable in this case. The evidence clearly supports the conclusion that appellant was directly involved in the abduction and murder of Mrs. Tolin. As in Jackson v. State, 502 So.2d 409 (Fla. 1986), appellant and Stevens both were major participants in the crime which necessarily contemplated the use of lethal force.
The closer issue is whether it can be said that there existed a reasonable basis for the jury's recommendation of life. If so, that recommendation must be given effect. Tedder v. State, 322 So.2d 908 (Fla. 1975). Appellant does not seriously argue that what was done to Tolin does not warrant imposition of the death penalty. In essence, he contends that the jury recommendation was plausible because there was no direct evidence that appellant, rather than Stevens, actually did the killing. Appellant points out that it was Stevens' idea to rob the Majik Market and refers to his own statement to police that Stevens *884 had gone crazy. Appellant also suggests that the jury could have concluded that Stevens was the more dominant of the two because Hamilton thought appellant would be more likely to confess.
Upon consideration, we conclude that the trial judge properly overrode the jury recommendation. There is ample support in the record for each of the aggravating circumstances. Appellant admitted his participation in the abduction. He acknowledged that he was with Stevens during the entire span of time within which Tolin was murdered. The evidence supports the conclusion that it was appellant's knife which caused the fatal stab wounds and that appellant returned home with some of the money from the Majik Market robbery. It would be unreasonable under these circumstances to conclude that appellant played no part in the brutal slaying. Hence, there was not a reasonable basis for the jury's recommendation of life imprisonment.
We affirm the sentence of death.
It is so ordered.
McDONALD, C.J., and OVERTON, EHRLICH, SHAW, GRIMES and KOGAN, JJ., concur.
BARKETT, J., dissents with an opinion.
BARKETT, Justice, dissenting.
I believe the record adequately supports the jury's recommendation of life imprisonment. Thus, the trial court's override should be reversed in accordance with the standard established in Tedder v. State, 322 So.2d 908, 910 (Fla. 1975):
In order to sustain a sentence of death following a jury recommendation of life, the facts suggesting a sentence of death should be so clear and convincing that virtually no reasonable person could differ.
NOTES
[*] Stevens was convicted of Tolin's murder in a separate trial. The judge overrode the jury's recommendation of life imprisonment and sentenced Stevens to death. The judgment and sentence were affirmed in Stevens v. State, 419 So.2d 1058 (Fla. 1982), cert. denied, 459 U.S. 1228, 103 S.Ct. 1236, 75 L.Ed.2d 469 (1983).