No. 87–5781.   ENGLE *v.* FLORIDA.   Sup. Ct. Fla.   Certiorari denied.

JUSTICE MARSHALL, with whom JUSTICE BRENNAN joins, dissenting.

Adhering to my view that the death penalty is in all circumstances cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments, see *Gregg* v. *Georgia*, 428 U. S. 153, 231–241 (1976) (MARSHALL, J., dissenting), I would grant the petition for certiorari and vacate petitioner's death sentence.

I

Even if I did not hold this view, I would grant the petition for certiorari to consider petitioner's contention that the Florida Supreme Court is applying the review standard of *Tedder* v. *State*, 322 So. 2d 908, 910 (1975) *(per curiam)*, in a manner that has denigrated the role of legitimate mitigating circumstances in Florida's sentencing scheme and that has led to the arbitrary infliction of the death penalty.   Petitioner's sentencing jury recommended life imprisonment, but the trial judge overrode the jury's recommendation and imposed the death sentence.   Under Florida's unusual system of capital sentencing, the trial judge is given the power to overturn a sentencing jury's rejection of the death penalty.   In upholding Florida's sentencing system against various constitutional challenges, this Court repeatedly has relied on the Florida rule, announced in *Tedder*, that "[i]n order to sustain a sentence of death following a jury's recommendation of life, the facts suggesting a sentence of death should be so clear and convincing that virtually no reasonable person could differ," *ibid.*   See *Spaziano* v. *Florida*, 468 U. S. 447, 465–466 (1984); *Barclay* v. *Florida*, 463 U. S. 939, 955–956, 958 (1983) (REHNQUIST, J., joined by Burger, C. J., and WHITE and O'CONNOR, JJ.); *Proffitt* v. *Florida*, 428 U. S. 242, 249 (1976) (opinion of Stewart, Powell, and STEVENS, JJ.).   The trial judge in this case failed even to consider the reasonableness of the jury's recommendation and refused to recognize petitioner's lesser role in the crime as a valid mitigating circumstance.   The Florida Supreme Court nonetheless affirmed the override of the jury's recommendation, arguing that it would be

"unreasonable . . . to conclude that [petitioner] played no part in the brutal slaying." 510 So. 2d 881, 884 (1987) *(per curiam)*. This reasoning evinces a cramped view of mitigating circumstances regarding evidence of petitioner's lesser role that is contrary to the constitutional principles recognized in *Lockett* v. *Ohio*, 438 U. S. 586 (1978), and *Eddings* v. *Oklahoma*, 455 U. S. 104 (1982). In addition, a review of this and other cases convinces me that the Florida Supreme Court has embraced conflicting views of whether such mitigating evidence may justify the jury's recommendation of life imprisonment. The court's inconsistent application of the *Tedder* standard in felony-murder cases has led to the arbitrary imposition of the death penalty.

Petitioner was charged, along with Rufus Stevens, with the murder of Eleanor Tolin, a cashier at the Majik Market in Jacksonville, Florida.[1] Evidence presented by the State at trial indicated that Stevens had a leadership role and planned the robbery of the market, whereas petitioner was the follower in the scheme. Evidence also indicated that Stevens was the actual killer. During guilt-phase deliberations, the jurors twice asked the judge whether they had "to be convinced the defendant personally killed the victim to render a [verdict] of murder in the first degree." Pet. for Cert. 5.[2] The penalty phase of the trial began immediately after the jury returned the guilty verdict. No additional evidence was presented. Counsel presented closing arguments and the jury was instructed to base its penalty recommendation on the evidence presented during the guilt phase. In his summation to the jury prior to the sentencing phase, the prosecutor stated:

> "You're concerned whether he had to have actually thrust the knife on her. I know you were concerned about that. . . . But if you believe, if you believe that Rufus Stevens killed that girl for the purpose of not being identified, that he

---

[1] Stevens was convicted of Eleanor Tolin's murder in a separate trial. The same trial judge, Judge Santora, overrode the jury's recommendation of life imprisonment and sentenced Stevens to death. The conviction and sentence were affirmed by the Florida Supreme Court. *Stevens* v. *State*, 419 So. 2d 1058 (1982), cert. denied, 459 U. S. 1228 (1983).

[2] Under Florida law, an individual is guilty of first-degree murder when a killing occurs during the commission of a robbery even though the individual did not actually do the killing. See *Hawkins* v. *State*, 436 So. 2d 44, 46 (Fla. 1983).

formed the intent to kill her for that purpose, that is first degree murder and then if you believe that [petitioner] gave this knife to Rufus Stevens, you find he is just as guilty as Rufus Stevens." *Id.*, at 6–7.

After deliberating for only 25 minutes, the jury returned a recommendation that petitioner be sentenced to life imprisonment.

Defense counsel argued to the trial judge that the jury's recommendation was reasonable because it was based on the view that Rufus Stevens was the leader, planner, and dominant participant in the robbery and murder, whereas petitioner was the follower and not the actual killer. The trial judge responded: "Are you under the impression that if two men participate in a crime like this, one of them kills her and the other one sits there and aids and abets, that he is not equally guilty? . . . That he should not suffer the same fate?" *Id.*, at 8. The trial judge proceeded to override the jury's recommendation and sentenced petitioner to death. On direct appeal, the Florida Supreme Court affirmed petitioner's conviction but reversed the death sentence because the trial judge had considered the testimony of Rufus Stevens at his separate trial in violation of petitioner's Sixth Amendment right of confrontation. See *Engle* v. *State*, 438 So. 2d 803, 813–814 (1983).

Following a new sentencing hearing, the same trial judge found four aggravating circumstances and no mitigating circumstances, and he again sentenced petitioner to death. The judge did not refer to the jury's recommendation of life imprisonment and made no attempt to evaluate the reasoning behind that recommendation. On appeal, petitioner argued that the jury's recommendation of life imprisonment was reasonable and thus should be upheld under the standard of *Tedder* v. *State*, 322 So. 2d 908 (1975). As developed by the Florida Supreme Court, and relied on by this Court, the *Tedder* standard requires an inquiry into whether the jury reasonably could have based its recommendation on statutory or nonstatutory mitigating circumstances. See *Amazon* v. *State*, 487 So. 2d 8, 13 (1986); *Welty* v. *State*, 402 So. 2d 1159, 1164 (1981). Petitioner argued that evidence before the jury—evidence presented by the State's own witnesses—indicated that petitioner played a lesser role in the robbery and murder and that Stevens did the actual killing. The jury's questions during its guilt-phase deliberations, and the remarks of the prosecutor prior

to the sentencing phase, reinforced the view that the jury returned its life recommendation based on this lesser role.

The Florida Supreme Court affirmed the imposition of the death sentence. The court held that there was "ample support . . . for each of the aggravating circumstances," 510 So. 2d, at 884, and found no error in the trial judge's determination that there were no mitigating circumstances. The court noted petitioner's claim that the jury's recommendation was reasonable because it may have believed that Stevens actually did the killing and was the dominant force behind the robbery. The court concluded, however, that "[i]t would be unreasonable under these circumstances to conclude that [petitioner] *played no part* in the brutal slaying. Hence, there was not a reasonable basis for the jury's recommendation of life imprisonment." *Ibid.* (emphasis added).

The Florida Supreme Court's reasoning thus requires that unless petitioner can show he "played no part" in the killing, evidence that he was not the actual killer, and that his role was as a follower rather than a leader, are not mitigating circumstances on which a reasonable juror could rely in recommending a life sentence. Such a view is wrong as a matter of federal law. In *Lockett* v. *Ohio, supra,* and *Eddings* v. *Oklahoma, supra,* this Court held that any aspect of the defendant's character and the circumstances of the offense may be considered in mitigation. This Court often has recognized that "the level of criminal responsibility of a person convicted of murder may vary according to the extent of that individual's participation in the crime." *Sumner* v. *Shuman,* 483 U. S. 66, 79 (1987). Indeed, in *Tison* v. *Arizona,* 481 U. S. 137, 151 (1987), the Court recognized that a State may never constitutionally impose the death penalty for felony murder unless the defendant was a major participant in the felony and displayed a reckless indifference to human life. By finding the jury's recommendation unreasonable because petitioner was unable to show he played no part in the killing, the Florida Supreme Court ignored the presence of valid mitigating evidence that the jury apparently relied on in rendering its recommendation of life imprisonment. The court's determination denigrates the role of valid mitigating circumstances in Florida's sentencing scheme, contrary to the principles of *Lockett* and *Eddings.*

Completely apart from this infirmity, the Florida Supreme Court's endorsement of the trial judge's refusal to consider the mitigating effect of petitioner's lesser role in this case is at odds with other Florida Supreme Court decisions applying the *Tedder* standard. This inconsistency is unexplained. The haphazard application of the *Tedder* standard in cases in which an accomplice's lesser role may have influenced the jury's recommendation of life imprisonment convinces me that the Florida sentencing scheme is being applied in a manner inconsistent with the requirements of due process.

The Florida Supreme Court's decisions in *Barclay* v. *State*, 470 So. 2d 691 (1985), and *Hawkins* v. *State*, 436 So. 2d 44 (1983), illustrate the court's occasional readiness to defer to jury recommendations of life imprisonment based on the defendant's lesser role in the capital crime. In *Barclay* the court reversed the trial judge's override of the jury's recommendation of life imprisonment. The defendant Barclay was a member of a group that called itself the Black Liberation Army. The group abducted a hitchhiker and drove him to a trash dump. The victim was then stabbed repeatedly by Barclay, and shot twice in the head by the apparent leader of the group, Jacob Dougan. See *Barclay* v. *State*, 343 So. 2d 1266, 1267 (1977). The Florida Supreme Court held that the jury's recommendation of life imprisonment for Barclay was reasonable. The court argued:

> "The jury apparently distinguished between Barclay and his main co-defendant, Jacob John Dougan, as evidenced by its recommendations of life imprisonment for Barclay (the follower) and death for Dougan (the leader). We hold that there was a rational basis for the jury's distinction between these co-defendants and that the trial court erred in overriding the jury's recommendation." 470 So. 2d, at 695.

Similarly, in *Hawkins* the court reversed an override of the jury's recommendation of life imprisonment, noting that evidence indicated that the defendant was not the triggerman, and holding that under those circumstances "there was a reasonable basis for the jury not to recommend the imposition of the death sentence." 436 So. 2d, at 47. Just as Barclay's and Hawkins' roles as followers justified the jury's recommendation of life, petitioner's role as a follower would seem to justify the jury's life recommendation. In the present case, the court did not cite or try to distinguish

its holdings in *Barclay* and *Hawkins*, and simply concluded that because petitioner played some part in the murder, the jury's life recommendation was unreasonable. Without more, I fail to see how this reasoning can be squared with *Barclay* and *Hawkins*, in which both defendants also clearly played some part in the murders.

Defendants Barclay, Hawkins, and Engle all were present during violent murders. Each presented evidence in mitigation indicating that they were followers, not leaders, and that they did not do the actual killings. All three were sentenced to die by the trial judge after their juries determined that death was an inappropriate sentence. Barclay and Hawkins are now serving life sentences. If the Florida Supreme Court's decision in this case is allowed to stand, Engle will die in the electric chair. The Florida Supreme Court has not explained how these cases can be reconciled. As petitioner explains, these holdings create confusion as to whether it is wise, or even competent, for defense counsel to emphasize at trial the defendant's lesser role in a capital crime. The opinions in *Barclay*, *Hawkins*, and *Engle* appear collectively to "stand for the proposition that trying a penalty phase or appealing a 'life override' under Florida's capital sentencing scheme is akin to Russian Roulette." Pet. for Cert. 26. I believe the Florida Supreme Court has failed to apply the *Tedder* review standard in a consistent manner in these cases, leading to the arbitrary imposition of the death penalty. I also believe that in the present case the Florida Supreme Court based its decision on a view of mitigation that is contrary to the constitutional principles of *Lockett* and *Eddings*. I would therefore grant the petition for certiorari.