576 So.2d 696 (1991)
Gregory Scott ENGLE, Petitioner,
v.
Richard L. DUGGER, Etc., Respondent. Gregory Scott Engle, Appellant,
v.
State of Florida, Appellee.
Nos. 74787, 74902.
Supreme Court of Florida.
January 15, 1991.
Rehearing Denied April 2, 1991.
*698 Larry Helm Spalding, Capital Collateral Representative, Billy H. Nolas, Chief Asst. CCR, and Thomas H. Dunn, Judith J. Dougherty and Josephine L. Holland, Staff Attys., Office of the Capital Collateral Representative, Tallahassee, for petitioner/appellant.
Robert A. Butterworth, Atty. Gen., and Mark C. Menser, Asst. Atty. Gen., Tallahassee, for respondent/appellee.
PER CURIAM.
Gregory Scott Engle was convicted of the first-degree murder of Eleanor Tolin. According to the record, Engle, together with Rufus Stevens, kidnapped Ms. Tolin from a convenience store, took her to a wooded area, raped her, strangled her, and stabbed her to death. The trial judge overrode the jury's recommendation of life imprisonment and sentenced Engle to death. In Engle v. State, 438 So.2d 803 (Fla. 1983), cert. denied, 465 U.S. 1074, 104 S.Ct. 1430, *699 79 L.Ed.2d 753 (1984), this Court affirmed the conviction but vacated the sentence and remanded for resentencing before the trial judge. On remand, the trial judge again sentenced Engle to death. This Court affirmed that sentence in Engle v. State, 510 So.2d 881 (Fla. 1987), cert. denied, 485 U.S. 924, 108 S.Ct. 1094, 99 L.Ed.2d 256 (1988).
Following the governor's issuance of a death warrant, Engle filed a motion for postconviction relief. The trial court entered a summary denial of the motion, and Engle now appeals the order of denial. He has also filed in this Court a petition for habeas corpus. We have jurisdiction. Art. V, §§ 3(b)(1), (9), Fla. Const. Pending the disposition of the appeal and the petition, we granted Engle's request for stay of execution.

MOTION FOR POSTCONVICTION RELIEF

Claim I
The summary denial of the motion to vacate was erroneous as a matter of law and fact. The disposition of this claim depends upon the sufficiency of Engle's allegations. These will be addressed in the discussion of the remaining claims.

Claim II
The jury override resulted in an arbitrarily, capriciously, and unreliably imposed sentence of death. This claim is procedurally barred because it was rejected in the appeal from Engle's resentencing. Further, the contention that the trial judge should have granted Engle's motion for disqualification should have been raised at that time. The judge's comments in the course of recusing himself from hearing the current motion for postconviction relief do not provide a basis to conclude that he did not impartially conduct the resentencing proceeding.

Claim III
Whether the prosecution knowingly presented false evidence. This claim is based on the contention that Dr. Floro, the medical examiner, testified that he found more blood in the victim's vagina than his autopsy report indicated. Engle says that this affected his conclusion that the victim was alive at the time her vagina was mutilated, a fact which is pertinent to the finding that the murder was heinous, atrocious, and cruel. This allegation does not constitute the presentation of false evidence by the state and provides no basis for postconviction relief.

Claim IV
Whether the state withheld material and exculpatory evidence. This claim is predicated upon the refusal of the state attorney and the sheriff to accede to Engle's request for disclosure of the records pertaining to his prosecution. This claim is well taken. Recently, this Court in State v. Kokal, 562 So.2d 324 (Fla. 1990), held that such records were subject to disclosure once the conviction and sentence had become final.

Claim V
Engle was denied the effective assistance of his trial counsel in several particulars:[1]
(a) Failure to move for suppression of statements on the premise they were obtained following an illegal arrest at his home without a warrant. A similar argument was rejected in Stevens v. State, 552 So.2d 1082 (Fla. 1989). The case upon which Engle relies, Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), was not decided until after Engle's trial, and his counsel could not have reasonably foreseen this result. The police had probable cause to arrest Stevens when Nathan Hamilton told the police that he and Engle were the killers. Further, even if Payton were deemed applicable, there were significant exigent circumstances for the police to arrest Engle in his house without a warrant. Hamilton would only fully implicate the killers if the police first *700 took his wife and child into protective custody. When the police and Hamilton went to his trailer for that purpose, Stevens and others were there. Thus, the police had reason to believe that Stevens would warn Engle. In fact, the record reflects that Stevens did tell Engle that Hamilton was implicating Engle in the murder.
(b) Failure to object to a witness's statement that Stevens had said that the stabbing had been done with Engle's knife. The testimony to which Engle refers actually occurred during cross-examination when Hamilton was asked if Stevens had told him to get the knife from Engle. Even if it could be said that defense counsel should have asked the court to strike the nonresponsive hearsay statement, such failure could not have affected the outcome of the case. Hamilton had already given the following clearly admissible testimony on direct examination:
Q. Mr. Hamilton, directing your attention back to Sunday night, March 18, 1979, you were watching the movie "Zoro" with the defendant, do you recall what if anything you said to the defendant during that conversation?
A. Yes, sir.
Q. What did you say?
A. I told him that Rufus Stevens had told me that his knife is what it was done with and he threw me his knife and said do you see any blood on my knife. I said no because I didn't see any blood on his knife. Then, I asked him if he thought it was worth a lousy fifty- or sixty-dollar robbery to take a girl out of a store and kill her and he said no, he didn't.
Then, I asked him why they did it. He said that they got her out of the store, away from a telephone, got her out into the country, Rufus Stevens went crazy and started saying she's going to identify us, she's going to identify us.
(c) Failure to investigate and to request a Richardson[2] hearing. Engle claims that the record shows that counsel failed to request a Richardson hearing with respect to a certain kitchen knife that was identified by Detective Parmenter. The record does not reflect any discovery violation which would suggest the need for requesting a Richardson hearing.
(d) Failure to adequately cross-examine the medical examiner. This contention relates once again to Dr. Floro's conclusion that the victim was alive when her vagina was mutilated. As noted by the trial judge, the record reflects that defense counsel had adopted a tactical approach not to question the medical examiner's conclusions in order not to inflame the jury. The limited cross-examination of Dr. Floro did not constitute ineffective assistance of counsel.
(e) Failure to object to a jury instruction. Engle claims that counsel should have objected to a jury instruction which he says had the effect of directing a finding of premeditation as a matter of law. The subject jury instruction did not direct a finding of premeditation as a matter of law but rather pointed out that where felony murder is proven, the requisite premeditation is presumed to exist for purposes of a conviction for first-degree murder. This instruction did no more than to point out that first-degree murder can be proven either by way of premeditation or felony murder. Counsel was not ineffective for failing to object to this instruction.
(f) Failure to raise voluntary intoxication as a defense. Engle says that counsel should have called mental health experts to explain the effects of alcohol and cocaine on the ability to form a specific intent. As noted by the trial court's reference to portions of the record, it is clear that Engle's counsel was adopting the trial strategy of attempting to show that Engle was not involved in the killing. The existence of other theories of defense does not mean that counsel was ineffective.
(g) Failure to raise competency to stand trial. This allegation is legally insufficient because of the absence of allegations of fact to support it.
*701 (h) Failure to sequester jury during deliberations. Engle contends that his counsel was ineffective for failure to insist that the jury be sequestered during deliberations. In his first appeal, Engle argued that it was error to permit the jury to separate during their deliberations. This Court rejected the argument because counsel had agreed to the separation and because the proper admonishments had been given to the jury. We observed that Engle's trial was "conducted with that degree of fairness and security that the bill of rights contemplates, and do not believe that he has good reason to believe that he was deprived of any fundamental rights." Engle, 438 So.2d at 808. It appears that the decision to allow the jurors to go home for the evening was made for their convenience, and we cannot say that counsel was ineffective for not insisting that sequestering take place. Further, there is no indication that the jurors would probably have found him innocent if they had been sequestered.
(i) Failure to prove the available mitigation and to adequately argue against the aggravating factors at the original sentencing and at the resentencing. Engle's first trial lawyer stated on the record that he and Engle had made the deliberate tactical decision to go forward immediately with the penalty phase of the trial because he felt that the jury may have made some sort of "compromise" in the lengthy guilt phase deliberations. This strategy was rewarded with the jury recommendation of life imprisonment.
Prior to Engle's sentencing, counsel had him examined by a psychiatrist and a psychologist. These reports were submitted to the trial judge and referred to by defense counsel in his argument to the court. Defense counsel called Nathan Hamilton who testified that Stevens was a more dominant person than Engle. The trial judge's original sentence of death was vacated because he had relied upon evidence introduced at the Stevens trial.
Upon resentencing, Engle was represented by new counsel. He had Engle reexamined by another psychologist, and his report was also submitted to the trial judge. The defense called Engle's mother and sister to testify concerning his background and character.
Engle says that his counsel was ineffective for failing to present more compelling evidence of Stevens' domination. He also asserts that counsel failed to fully develop important mental health mitigating evidence and that additional family members should have been called who could have testified to his drug and alcohol abuse. Finally, he says that counsel should have attacked the prior conviction of arson in order to try to demonstrate no significant history of prior criminal activity. All of these allegations are refuted by the record.
Defense counsel's use of Hamilton to show Engle's domination by Stevens demonstrated ingenuity rather than ineffectiveness because Hamilton had been the state's major accusing witness. Engle's mother also testified that her son was a follower rather than a leader. The trial court's refusal to find that Engle was under the domination of Stevens is likely attributable to the fact that the examining psychiatrist had noted that there was nothing to indicate that Engle was particularly vulnerable to the domination of others.
Engle's mother told of her son's difficult childhood. She also characterized him as nonviolent. His sister testified about their abusive father and Engle's peaceful nature. Other family members could have been called to provide additional background, but we cannot say that counsel was ineffective by only presenting the testimony of Engle's mother and sister.
Counsel had Engle examined by three mental health experts, and their reports were submitted into evidence. There is no indication that counsel failed to furnish them with any vital information concerning Engle which would have affected their opinions.
With respect to the prior arson conviction, Engle argues that counsel should have called his cousin who would have testified that while Engle was present at the time it occurred, someone else had actually set the fire. The fact remains, however, *702 that Engle was convicted of this crime. Further, Engle told two of the mental health experts that he had committed arson on many occasions. Counsel cannot be faulted for failing to highlight Engle's criminal past.
(j) Failure to request a confidential mental health expert. This contention is legally insufficient because it was unaccompanied by any supporting factual allegations. As noted by the trial judge, "The court fails to see how any honest physician would have rendered a `different' evaluation by rendering a confidential evaluation."

Claim VI
Engle was deprived of his constitutional rights because his examining mental health experts failed to conduct professionally appropriate mental health evaluations. Engle alleged that he has recently been examined by two new mental health experts who have concluded that he has serious mental problems although he failed to attach their reports to his petition. Assuming, however, the truth of these allegations, this does not demonstrate that the three mental health experts who examined him contemporaneous with his trial and sentencing conducted unprofessional examinations. Mental health experts often reach differing conclusions. Contrary to Engle's suggestion, his original examining mental health experts were aware of his prior alcohol and drug abuse. This is not a case like Mason v. State, 489 So.2d 734 (Fla. 1986), in which a history of mental retardation and psychiatric hospitalization had been overlooked.

Claim VII
Whether Engle was forced to trial without being afforded a hearing on the question of his competency. The record gives no indication that Engle was incompetent to stand trial. To the contrary, the mental health experts had concluded that he was competent. The fact that a new mental health expert may have reached the opposite conclusion based on an examination ten years later does not warrant relief.

Claim VIII
Victim impact evidence was admitted in violation of Booth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), and South Carolina v. Gathers, 490 U.S. 805, 109 S.Ct. 2207, 104 L.Ed.2d 876 (1989). At the outset, it should be noted that there were no objections with respect to victim impact evidence or argument, and there is no contention that counsel was ineffective for failing to object. Therefore, this claim is procedurally barred. Grossman v. State, 525 So.2d 833 (Fla. 1988), cert. denied, 489 U.S. 1071, 109 S.Ct. 1354, 103 L.Ed.2d 822 (1989). Moreover, it should be noted that the jury recommended that Engle be sentenced to life imprisonment. As noted in Grossman, judges are trained to render their decisions without regard to impermissible evidence. Alternatively, and in any event, any Booth error which may have occurred was harmless beyond a reasonable doubt. See Grossman.

Claim IX
The trial court did not properly consider the nonstatutory mitigating evidence. This claim is procedurally barred because it should have been raised on Engle's direct appeal from the resentencing.

Claim X
The trial court failed to provide a factual basis in support of the death penalty. This claim is procedurally barred because it should have been raised on the appeal from the resentencing.

Claim XI
The trial court erroneously refused to find mitigating circumstances which were clearly not in the record. This claim is procedurally barred because it should have been raised on the appeal from the resentencing.

Claim XII
Introduction of inflammatory crime-scene photographs was fundamental *703 error. This claim is procedurally barred because it should have been raised on the appeal from the resentencing.

Claim XV

(there were no claims XIII and XIV)
The trial court improperly found the "heinous, atrocious and cruel" aggravating circumstance. This claim is procedurally barred because it should have been raised on the appeal from the resentencing.

Claim XVI
The trial court shifted the burden to prove that death was inappropriate. This claim is procedurally barred because it should have been raised on the appeal from the resentencing.

PETITION FOR HABEAS CORPUS

Issue I
Whether the state violated Engle's rights by arguing for his conviction and sentence to death based on victim impact factors in violation of Booth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), and South Carolina v. Gathers, 490 U.S. 805, 109 S.Ct. 2207, 104 L.Ed.2d 876 (1989). This claim is procedurally barred because no objection was raised in the trial court. Grossman, 525 So.2d 833. Moreover, Engle obtained a favorable jury recommendation. Alternatively and in any event, any Booth error which may have occurred was harmless beyond a reasonable doubt. See Grossman.

Issue II
Whether appellate counsel was ineffective for failing to argue that the trial judge should have granted Engle's motion to disqualify himself at resentencing. The motion for disqualification contained no factual basis for its allegation of bias but relied only upon the fact that this Court had reversed the previous death sentence because the judge had erroneously taken into consideration certain evidence from the Stevens trial. His contention that the judge could not follow this Court's directions on remand and resentence Engle without consideration of the evidence from the Stevens trial was legally insufficient to compel disqualification. See Dragovich v. State, 492 So.2d 350 (Fla. 1986).

Issue III
Whether the trial judge's override of the jury recommendation was improper. This claim is procedurally barred. It was argued and rejected by this Court in Engle's appeal from his resentence to death. Engle, 510 So.2d 885.

Issue IV
Whether appellate counsel was ineffective for failing to argue that the trial judge's written findings in support of the death sentence were legally inadequate. The record reflects that the trial judge entered a written order setting forth the basis for the aggravating circumstances and reciting the absence of mitigating circumstances. Counsel cannot be faulted for failing to argue a point which offers so little chance of success.
Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Issue V
Whether the trial judge limited his consideration to statutory mitigating circumstances. This is essentially a claim of error under Hitchcock v. Dugger, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987). However, unlike Hitchcock and other similar cases, there was no improper jury instruction and the trial court was well aware that nonstatutory mitigating circumstances were to be considered. The fact that the trial court found that none existed does not mean that they were not considered. Counsel was not ineffective for not arguing this issue on appeal.

Issue VI
Whether appellate counsel was ineffective for not arguing that the trial court failed to find mitigating circumstances contained in the record. While Engle did present some evidence in mitigation, the trial judge was not required to accept it as part of his findings. Counsel *704 was not ineffective for not arguing this issue on appeal.

Issue VII
Whether appellate counsel was ineffective for failing to argue that inadmissible hearsay statements made by Stevens had been improperly admitted into evidence at the trial. Appellate counsel was not ineffective for failing to argue this issue because at the trial no objections were directed toward any of the evidence which is now said to be inadmissible.

Issue VIII
Whether appellate counsel was ineffective for failing to argue the propriety of one of the jury instructions on felony murder. Appellate counsel could not be deemed ineffective for failure to argue this issue because the subject instruction was given without objection.

Issue IX
Whether appellate counsel was ineffective for failing to argue that the trial judge's finding that the murder was especially heinous, atrocious, or cruel violated Maynard v. Cartwright, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988). Appellate counsel was not ineffective because such an argument would not have succeeded. See Smalley v. State, 546 So.2d 720 (Fla. 1989).

Issue X
Whether appellate counsel was ineffective for failing to argue that the jury instructions shifted the burden to Engle to prove that the death penalty was inappropriate. Appellate counsel cannot be deemed ineffective because there was no objection to the jury instructions which are now questioned.

Issue XI
Whether appellate counsel was ineffective for failure to argue that the trial judge relied upon nonstatutory aggravating circumstances and Engle's lack of remorse. Appellate counsel cannot be deemed ineffective for arguing a point which on this record had such little chance of success.

Issue XII
Whether Engle's death sentence is predicated upon the finding of an automatic, nondiscretion-channeling, aggravating circumstance. Engle argues that because he was prosecuted under theories of both premeditated murder and felony murder, his finding of guilt created an automatic aggravating factor. There is no merit in this contention. The trial judge's finding that the felony was committed while the defendant was engaged in the commission of a felony was supported by the evidence and was independent of the conviction of murder.

CONCLUSION
We affirm the order denying the motion for postconviction relief. However, the state attorney shall disclose to Engle's attorney those portions of his file covered by chapter 119, Florida Statutes (1987), as interpreted in State v. Kokal, 562 So.2d 324 (Fla. 1990). The two-year time limitation of Florida Rule of Criminal Procedure 3.850 shall be extended for sixty days from the date of such disclosure solely for the purpose of providing Engle with the opportunity to file a new motion for postconviction relief predicated upon any claims under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), arising from the disclosure of such files. In this manner, Engle will be placed in the same position as he would have been if such files had been disclosed when they were first requested. The petition for habeas corpus is denied. The stay of execution is also vacated, although the death warrant which prompted these proceedings has long since expired.
It is so ordered.
SHAW, C.J., OVERTON, McDONALD, GRIMES AND KOGAN, JJ., and EHRLICH, Senior Justice, concur.
BARKETT, J., concurs in result only.
NOTES
[1] All claims of ineffective assistance of counsel are considered under the dictates of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
[2] Richardson v. State, 246 So.2d 771 (Fla. 1971).